## SARAH A. LOCKE *v.* CHARLES P. ROWELL.

At common law, a lease for years by a tenant for life was never regarded as creating a forfeiture, as the reversioner was not affected by such contract.

It is the *unequivocal act* of abandonment by him or her, holding the homestead right, which is to deprive them of their estate, such as is evinced by a sale and absolute conveyance, or by a change of domicil, or a substitution of another estate elsewhere.

Verbal testimony is admissible to show the limits and extent of a home farm, or homestead ; also often admissible to explain a change of domicil. The *intention* to change it is a matter of fact to be found by the jury.

TRESPASS, *quare clausum fregit,* and carrying away plaintiff's grass. Plea, general issue. The action was tried by the court and the following facts found :

The plaintiff is the widow of Daniel Locke, late of Warner, deceased, who owned the premises in question at the time of his death, in 1858. The plaintiff has one daughter living, now about twelve years of age. The *locus in quo* was assigned to the plaintiff as her homestead out of the estate of her late husband, January 10, 1859, and con-

tains about twenty-five acres of land, on which was a house and shed, and old barn, which has since blown down.

The plaintiff lived upon these premises a large portion of the time until April, 1861, when she rented them to one Day Emerson for one year; and again, in 1862, she rented the premises to one Andrew J. Davis for that year. These contracts were in writing, and were similar for both years. The one to Davis was as follows:

"Warner, April 19, 1862. I, the undersigned, Sarah A. Locke, do hereby shew that I have rented my farm, situated in Warner, near Mr. Levi Flanders, to Andrew J. Davis, for the sum of twenty-eight ($28) dollars, and that he shall have the income of said farm for the year of 1862. I hereby shew that Andrew J. Davis has paid me one half down, and the remainder to be paid in the fall.

Whereof I have hereunto set my hand and seal.

SARAH A. LOCKE. [SEAL.]
Witness, Sally Sargent."

The lessees entered under their leases and occupied the premises, except the house, in 1861, and part of 1862. Emerson testified that he understood he hired the house in 1861, and had a right to occupy it, but having no occasion to occupy it, he did not, and never had the keys. The plaintiff testified, against the defendant's objection, that she did not understand she leased the house either year, and such is found to be the fact. Neither of the lessees ever occupied the house at all, but the plaintiff has always kept her furniture in it the same as before the leases, and has always kept the key of the house and exercised the sole control of it. During the years 1861 and 1862 she was absent most of the time, coming back about three times each year, opening the house and airing it, building fires in it, and taking care of her furniture, but stopping only a few days at a time, not exceeding a week in any one instance. During these years she was visiting among her friends and relatives a part of the time, and a portion she was at work at Manchester and other places. In the spring of 1863 she returned and resided in the house on the premises, where she has continued most of the time since. In the summer of 1863 she and the defendant both attempted to cut the grass on the premises, but the defendant succeeded in getting the larger part of it, and this suit is brought for that entry and carrying away of the plaintiff's grass. The income of this land is not sufficient to support the plaintiff. She has never intended to abandon her homestead or relinquish her right there.

The defendant's title is as follows:

John Currier, administrator of Daniel Locke (plaintiff's late husband,) in consideration of $27.50, conveyed to Franklin Simonds, by deed dated April 30, 1859, in pursuance of license from the probate court, "the reversion of the homestead" in the *locus in quo;* and said Simonds conveyed to the defendant, by deed dated April 7, 1862, in consideration of $125.00, the same reversion. The defendant claims

that the plaintiff forfeited her homestead by leasing the premises and ceasing to occupy the same in 1861, and again in 1862, and that her right to the same was thereby forfeited and extinguished when he cut the grass in question in 1863.

Upon the foregoing facts the court ruled, *pro forma*, that the plaintiff was entitled to recover; to which ruling the defendant excepted. And it was agreed that judgment be rendered for the plaintiff for ten dollars damages and full costs, or for the defendant for his costs, according to the opinion of the court upon the questions of law arising in the case.

It is ordered that said questions of law be reserved and assigned to the law term.

*A. & F. A. Fowler*, for defendant.

The court erred in ruling that the plaintiff was entitled to recover upon the facts found, and should have ordered judgment for the defendant, for these reasons:

1. The plaintiff's title to the *locus in quo* was an estate for life, dependent on the condition subsequent that she should continue personally to occupy and improve the same. When in April, 1861, she leased the premises to Emerson for one year, and herself ceased to occupy them, and Emerson entered under his lease and occupied them, her estate was forfeited to the owner of the reversion, and the deed of Simonds to the defendant, subsequently made, gave to the defendant a fee in the premises. By the first section of the homestead act the plaintiff's tenure is limited to the period of her actual occupancy. Compiled Laws, 474. In *Norris* v. *Moulton*, 34 N. H. 396, the estate of the widow is expressly said to be limited to her actual occupancy. So in *Atkinson* v. *Atkinson*, 37 N. H. 436, the plaintiff's interest is defined to be "a conditional estate for life; its continuance depending upon her continuing to occupy it as a homestead." Such is also the doctrine of *Gunnison* v. *Twitchel*, 38 N. H. 62; and *Fletcher* v. *State Capital Bank*, 37 N. H. 369.

2. That the occupation, essential to the continuance of the life estate, must be personal and not by a tenant, would seem to be settled by the decisions which hold that personal occupation is essential to give the homestead right originally in land. *Hoitt* v. *Webb*, 36 N. H. 158; *True* v. *Morrill*, 28 Vt. 672; *Charless* v. *Lamberson*, 1 Clarke (Iowa) 435; *Floyd* v. *Mosier*, 1 Clarke (Iowa) 512; *Cook* v. *M'Christian*, 4 Cal. 23; *Taylor* v. *Hargous*, 4 Cal. 268; *Walters* v. *People*, 18 Ill. 194.

3. The intention of the plaintiff in making the leases was immaterial, and it was incompetent for her to testify or the court to find an intention from her testimony in conflict with the language and legal effect of the leases. Her testimony could not properly be received to contradict and vary the written leases.

4. Even if the court should hold the intention to be material as to the house upon the premises, it cannot affect the result in this case, as

there is no pretence but what the plaintiff intended to lease and the lessees actually entered and occupied the mowing land, so that as to the *locus* of the alleged trespass it was designedly leased for two successive years, and the plaintiff ceased for those two years to occupy it in any way; the conditional life estate therein being thereby forfeited.

*Tappan*, for plaintiff, contended : That there is nothing in the statute constituting the homestead indicating, that a mere temporary absence and the occupying in part by another, the plaintiff receiving the income, which should oust her of her home, or her rights. It would be absurd to say, that a man, who, from convenience or necessity, saw fit to carry on his farm by a tenant, living in his own house the while, had ceased to occupy it.

The statute contemplates an entire abandonment, and an absolute and permanent giving up of the possession by the widow, either by marriage and moving to another home, or in some other way, before she could lose her *home*, which a humane law gives to her and her children.

The question of *intention* is material, and is one of fact in this case, which the judge, who tried the case, was competent to find, and did find in favor of the plaintiff. The court finds : "She has never *intended* to abandon her homestead, or relinquish her right there."

If a person leave his home for a temporary purpose, but with the intention to return to it, this change of place is not in law a change of domicil. Story's Conflict of Laws, p. 42 ; *Bump* v. *Smith*, 11 N. H. 49.

NESMITH, J. The plaintiff claimed title to the land, where the trespass was committed, by virtue of the actual possession thereof, and the assignment of her homestead estate in said premises, agreeably to the provisions of chap. 196, of the Compiled Laws. The defendant claimed title to the same premises by the purchase of the reversion of plaintiff's life estate, and that plaintiff had forfeited her life estate by the act of leasing her lands to two separate tenants, in the years 1861 and '62, and a residence elsewhere.

Said act creating said homestead, among other things, provides, "that such homestead shall not be assets in the hands of an administrator for the payment of the debts, nor subject to the laws of distribution, or devise, so long as the widow or minor children, or any, or either of them shall *occupy* the same." It may be conceded that a *homestead*, created by virtue of our statute, has the relations and liabilities incident to conditional estates for life. *Atkinson* v. *Atkinson*, 37 N. H. 436.

The *continued personal occupation* of the estate by the plaintiff, or her minor daughter, is claimed by the defendant to be the subsequent condition, upon which they may hold their estate. And the question is, has there been a breach of the implied legal condition here, so that plaintiff has forfeited her estate, as a consequent penalty? The general rule of construction applicable here is, that such conditions subsequent, when relied on to work a forfeiture of the estate, must be construed strictly, or in other words liberally in favor of the holder of the estate.

1 Wash. Real Estate, ch. 14, sec. 5 ; *Merrifield* v. *Cobleigh,* 4 Cush.
178 ; 4 Kent's Com. 129, 131.

Under the finding of the court, and the evidence in this case, it does
not appear reasonable to us to apply the doctrine of forfeiture to plain-
tiff's little heritage.　We cannot think it was the intention of the legis-
lature to prevent temporary contracts of this nature, where it became
the manifest interest of the owners of the homestead right to part with
it for a limited time.　Such a construction would operate severely upon
those, situated like the plaintiff, who are not presumed to have had
means either to do the work themselves, or to hire laborers to carry on
their land, and who could not from its income obtain means to pay for
the adequate labor, and also at the same time to maintain themselves
from their little estates comfortably.　If plaintiff could raise small crops,
or own a cow, she had no barn in which to put either.　The rents of
her estate, as realized by her, or the value of the reversion, when pur-
chased by Simonds, indicate clearly that she must rely upon other
sources for her own support, as well as for that of her child.

At common law, a lease for years by a tenant for life was never looked
upon to create a forfeiture, because the lessee for years was originally
but a bailiff to the freeholder, and the tenant for life only had the free-
hold, and was to answer the services, and he in reversion was in no wise
to be affected by it, there being nothing done to dispossess him.　4
Comyn's Digest, 396, and note ; 1 Term Rep. 738 ; 2 Taunt. Rep.
202.

This is the sensible doctrine applicable to this case.　The defendant,
as the reversioner, was not disturbed in the enjoyment of his estate.
No more waste or injury could be presumed to visit him, whether the
homestead or life estate was enjoyed by the plaintiff or her tenant.
From the defendant's deed, he bought nothing but the reversion.　It is
only the *unequivocal purpose* or *act* of the plaintiff, which should de-
prive her of her estate, or an absolute abandonment thereof, such as is
evinced by a sale and conveyance thereof, and a substitution of a like
estate elsewhere, or other undoubted change of domicil.　*Moss* v. *War-
ner,* 10 Cal. 296 ; Am. Law Reg. Oct., 1862 ; *Hoit* v. *Webb,* 36 N.
H. 158 ; *Drury* v. *Bachelder,* 11 Gray 214 ; *Dalanty* v. *Pynchon,*
6 Allen 570 ; *Lazell* v. *Lazell,* 8 Allen 576.　The two latter cases
are strongly in point, and the reasoning of the court appears to us con-
clusive.

In *Dalanty* v. *Pynchon,* there was for a year a ·change of residence
of the holder of the homestead, and a lease of the premises for that
time to another person, but evidently with the intent to retain, and this
was held no abandonment.　In *Lazell* v. *Lazell,* the husband of the
petitioner removed from land and buildings, occupied as a hotel in Chesh-
ire, Mass., in the spring of the year 1863, relinquishing the premises
to his son, and removed to another house in Cheshire, where he lived
until his death in November of the same year.　His widow petitioned
for a right of homestead, to be assigned in the premises, occupied as
the hotel.　The petition and hearing was in 1864.　After the decease
of her husband the widow had made no re-entry into the premises occu-

pied as the hotel.    Upon this state of facts, the court say, the mere fact of cessation to occupy for a time is not an abandonment of the estate. Nothing short of a voluntary abandonment of an unequivocal character, and so understood by all the parties in interest, would divest the estate of a homestead interest charged thereon, if such defence can avail at all.

It appears clearly to us, under the circumstances surrounding the plaintiff here, that we have no right to infer that a lease of her premises for one year only at a time, could imply the intent finally to abandon or surrender her estate.    It appears to us, she only intended to adopt the most profitable mode of enjoying her estate for a limited time.    Her absence from the premises was to obtain a living for herself and daughter. Her intention to retain becomes manifest from the fact, that, under the contracts as made, she must collect her rents, pay her taxes, irrespective of the evidence, that more or less of the furniture remained in her house, and required attention and visits from time to time.    There is no evidence that she expressed any purpose to change her domicil.    The fact that the plaintiff actually resumed a *pedis possessionem* of her premises, after the expiration of the second lease, should have operated as notice to the defendant and all the world, that she had never permanently abandoned her estate, or intended so to do.

The argument of the defendant would practically deprive the soldier, or mariner, from reaping a benefit from a *homestead right*, provided the former was required to perform a campaign duty of one year, or the latter a voyage of the same length.

As to the question that verbal testimony was admitted by the court to show what farm she rented—the term *farm*, or *homestead farm*, is ambiguous.    What is meant by such expressions may be shown by parol evidence.    The limits, boundaries, and meaning of the word, and of such estates, are commented upon at length in *Bell & als.* v. *Woodward*, 46 N. H. 315, and cases cited.    So also, a party may testify as to the *intent* as manifested by the act of removal from one town to another, or a change of domicil.    *Fisk* v. *Chester*, 8 Gray 506 ; 1 Allen 474 ; *Thorndike* v. *Boston*, 1 Met. 242.

Questions of this nature are proved as matters of fact, and are for the jury.

*Judgment on the finding of the court for plaintiff.*